UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFREY R. HILL, <br><br> Plaintiff, <br><br> v. <br><br> NANCY B. MARTHAKIS, et al., <br><br> Defendants. | CAUSE NO. 3:20-CV-247-JD-MGG |

OPINION AND ORDER

On March 20, 2020, Plaintiff Jeffrey R. Hill, a prisoner without a lawyer, was granted leave to proceed on a claim against Defendants Dr. Nancy B. Marthakis and Dr. Michael Mitcheff in their individual capacities for denying him constitutionally adequate medical treatment for his broken wrist, in violation of the Eighth Amendment. ECF 5 at 4. On July 1, 2020, Defendants filed a motion for summary judgment arguing that Hill failed to exhaust his administrative remedies before he filed this lawsuit. ECF 16. Hill received a notice as required by N.D. Ind. L.R. 56-1(f), advising him of the consequences of failing to respond to Defendants' motion. ECF 19. On July 15, 2020, Hill responded to Defendants' motion. ECF 22. On July 29, 2020, Defendants filed a reply. ECF 23. The summary judgment motion is now ripe for decision.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id*. at 1024. Failure to exhaust is an administrative defense on which the defendant bears the burden of proof. *Dole*, 438 F.3d at 809.

Inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When prison staff hinders an inmate's ability to use the administrative process, such as

2

by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

A grievance process has been available to Hill during his incarceration at the Indiana State Prison. ECF 18 at ¶ 7. The grievance process sets forth a multi-step grievance process. *Id.* at ¶¶ 9-27. First, an inmate must try to informally resolve his complaint. *Id.* at ¶ 10.

> The offender may do this by discussing the complaint with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs. If the offender is uncomfortable discussing the issue with that staff member, he/she may discuss with the staff person's immediate supervisor.

ECF 18 at 23.

If the inmate cannot resolve the complaint informally, he can file a grievance within ten business days of the incident giving rise to the complaint. ECF 18 at ¶ 11. The offender must also "provide evidence (e.g., "To/From" correspondence, State Form 36935, "Request for Interview") of the attempt" to resolve the complaint informally. *Id.* at ¶ 10.

Once a formal grievance is filed, the Offender Grievance Specialist reviews it to ensure it meets the requirements of the grievance policy. ECF 18 at ¶ 13. A grievance can be rejected if it is filed more than ten business days after the incident or if the offender is grieving a matter that is inappropriate for the grievance process. *Id.* at ¶ 15.

3

The Offender Grievance Specialist must either return the grievance if it is unacceptable or provide a receipt for it. *Id*. at ¶ 12. If the offender does not receive either a receipt or a form indicating that the grievance was rejected within five days of submission, the offender must notify the Offender Grievance Specialist and keep a copy of that notice. *Id*. The Offender Grievance Specialist will then investigate. *Id*.

If a grievance is accepted, the Offender Grievance Specialist has fifteen days to complete an investigation and respond. ECF 18 at ¶ 18. An offender who is dissatisfied with the resolution of the formal grievance may file an appeal within five days of receiving a response to the formal grievance. *Id*. at ¶ 21. If the appeal is denied, the offender may seek review. *Id*. at ¶ 24. The grievance process is complete when an offender attempts an informal resolution, files a formal grievance, files an appeal with the Warden or his designee, and files a second appeal with the Offender Grievance Manager. *Id*. at ¶ 29. Indiana Department of Correction ("IDOC") records show whether an inmate filed an informal grievance, formal grievance, or an appeal, as well as the responses. *Id*. at ¶ 31.

According to the IDOC's grievance records, Hill filed his first formal grievance on July 24, 2018, wherein he stated he had not received appropriate medical care for an injury he sustained to his left wrist on July 4, 2018. ECF 18 at ¶ 35(a); ECF 18 at 34-35. Under the grievance policy, the latest Hill could submit a grievance form pertaining to the July 4, 2018, incident was ten business days from the date of the incident, or July 18, 2018. *Id*. at ¶ 35(b). The grievance form was returned to Hill on July 26, 2018, because it

4

was submitted too late and he failed to provide any proof of an attempt at an informal resolution. ECF ¶ at 35(b); ECF 18 at 33.

On July 27, 2018, Hill submitted another formal grievance form listing the July 4, 2018, incident date. ECF 18 ¶ 35(c); ECF 18 at 37. On the form, Hill noted that he had submitted an informal grievance on July 5, 2018, but he never received a response to it. ECF 18 at 37. He also stated his left wrist had been broken since July 4, 2018 and he had never received appropriate treatment for his injury. *Id*. The July 27, 2018, grievance form was returned to Hill because he submitted the form more than ten business days after the July 4, 2018, incident. ECF 18 at ¶ 35(d); ECF 18 at 36.

On August 13, 2018, Hill submitted a third formal grievance form stating that Dr. Marthakis lied about the results of his left wrist x-rays, which caused him to endure extreme pain. ECF 18 at ¶ 35(e); ECF 18 at 39. He requested that Dr. Marthakis be "held accountable for her actions." *Id*. Hill noted on his grievance form that he had filed an informal grievance, but he had not yet received a response. ECF 39 at 43. The grievance form was returned to Hill because the formal grievance was submitted too early, as it was submitted the same day as the informal grievance. ECF 18 at ¶ 35(f); ECF 38-40. And the informal grievance pertained to medical records whereas the formal grievance pertained to inadequate medical care. *Id*.

On August 17, 2018, Hill submitted a fourth formal grievance form, which was the same grievance form he previously submitted on August 13, 2018. ECF 18 at ¶ 35(g); ECF 41, 42. The grievance form was returned to Hill because the appropriate person

never received his informal grievance and there was no proof of an attempt at an informal resolution. ECF 18 at ¶ 35(h); ECF 41.

In response to the summary judgment motion, Hill argues that he was unable to exhaust his administrative remedies because Defendants obstructed his access to the grievance process. ECF 22 at 2-7. He asserts he attempted to informally resolve the issue of the medical care he received when he injured his left wrist on July 4, 2018, before he filed his formal grievance on July 24, 2018. ECF 22 at ¶¶ 1, 2. Hill claims that on July 5, 2018, he sent Health Services Administrator Sherri Fritter and Grievance Specialist Joshua Wallen Request for Interview slips explaining he was denied appropriate medical treatment for his broken left wrist. ECF 22 at ¶ 2; ECF 22-1 at 3-5. He states he then waited ten days for a response to his informal grievance requests, but he never received one. ECF 22 at ¶ 2.

Hill next states that on July 17, 2018, he contacted his counselor, Todd Marsh, to request a formal grievance form. ECF 22 at ¶ 3. He contends that Marsh refused to give him the form and told him to fill out a health request form to obtain medical treatment. *Id*. at ¶¶ 6, 7. Because he was unable to get a formal grievance form from Marsh, Hill asked offender Frank Price to obtain the form from Price's counselor. ECF 22 at ¶ 11; ECF 22-1 at ¶ 2. On July 17, 2018, Price asked his counselor for a formal grievance form and, on July 18, 2018, his counselor gave him three forms. ECF 22-1 at ¶¶ 2, 3. Price then gave the forms to Hill on July 23, 2018. ECF 22 at ¶ 12; ECF 22-1 at ¶ 4. The next day, on July 24, 2018, Hill filed his formal grievance regarding the July 4, 2018, incident. ECF 18 at ¶ 35(a). Given these events, Hill contends he could not meet the deadline for filing a

6

formal grievance because Defendants refused to respond to his July 5, 2018, informal grievance, and Marsh refused to give him a formal grievance form when he requested one.

However, in their reply, Defendants assert that Hill had access to the grievance process, and he could have filed a timely formal grievance regarding the July 4, 2018, incident, but failed to do so. ECF 23 at 3-4. To support their contention, they explain that Marsh worked as a counselor in July 2018 and was responsible for providing formal grievance forms to offenders. ECF 24 at ¶ 4. Marsh attested to the fact that it was his custom, practice, and habit to always provide a formal grievance form when he was asked for one and he never asked an offender why he was requesting a form. *Id*. at ¶¶ 6, 7. Marsh stated that, on July 17, 2018, when Hill asked him for a formal grievance form, he did not ask Hill why he was requesting the form and he did not refuse to provide Hill with the form. *Id*. at ¶¶ 7, 9. Marsh also did not tell Hill to fill out a health care request form when he requested the grievance form. *Id*. at ¶ 8. Therefore, according to Defendants, Hill's access to the grievance process was not obstructed.

In this case, Hill has produced evidence that shows he was unable to file a timely formal grievance regarding his July 4, 2018, left wrist injury because he could not obtain a formal grievance form from Marsh on July 17, 2018. Defendants have also produced evidence that shows Marsh did not refuse to give Hill a formal grievance form on July 17, 2018, when he asked Marsh for the form. Because the question of whether Marsh

7

refused to give Hill a formal grievance form on July 17, 2018 is material to the outcome of this case, summary judgment cannot be granted.[1]

Furthermore, while Hill seems to assert that by filing three additional grievances on July 27, 2018, August 13, 2018, and August 17, 2018, he exhausted his administrative remedies, he is incorrect on this point. Regarding his July 27, 2018, formal grievance, the form was returned to Hill because it was submitted more than ten business days after the July 4, 2018, incident. ECF 18 at ¶ 35(d); ECF 36-37. The August 13, 2018, formal grievance was also returned to Hill because he submitted it on the same day as the informal grievance, and the informal grievance pertained to Hill's medical records, whereas the formal grievance pertained to his medical care. ECF 18 at ¶ 35(f); ECF 38-40. Hill's August 17, 2018, formal grievance form was also returned to him because it was the same grievance he had submitted on August 13, 2018, the appropriate person never received the grievance, and there was no attempt at an informal resolution. ECF 18 at ¶ 35(g), (h); ECF 41-42. Therefore, the fact that Hill filed these grievances does not establish that he exhausted his administrative remedies.

---

[1] In their reply, Defendants assert that paragraphs 4, 5, and 6 of Hill's declaration should be stricken because they constitute inadmissible hearsay evidence and paragraph 5 of Price's declaration should be stricken because it is premised on speculation or conjecture. ECF 23 at 5. However, these types of motions must be filed separately. *See* N.D. Ind. L.R. 7-1(a). Furthermore, it is the function of the court, with or without a motion to strike, to carefully review the evidence and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record. *See, e.g., S.E.C. v. KPMG LLP*, 412 F. Supp. 2d 349, 392 (S.D.N.Y. 2006), *superseded on other grounds as recognized in S.E.C. v. Wey*, 246 F. Supp. 3d 894 (S.D.N.Y. 2017); *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004). Therefore, the request to strike portions of Hill's and Price's declarations is denied.

Accordingly, because summary judgment cannot be granted on the present record, Defendants' motion will be denied. Defendants have also filed a motion to set an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). This motion will also be denied. Defendants will be given an opportunity to refile the motion once they have reviewed this Opinion and Order and considered whether they wish to proceed with a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Unless Defendants withdraw their exhaustion defense, it will be necessary to hold a hearing to determine whether Marsh refused to provide Hill with a formal grievance form on July 17, 2018, when Hill asked Marsh for the form.

For these reasons, Defendants' motion for summary judgment (ECF 16) and Defendants' motion to set a *Pavey* evidentiary hearing (ECF 25) are DENIED. Within fourteen (14) days of this order, Defendants are ORDERED to file a notice advising the court whether they wish to waive their exhaustion defense or proceed with a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Defendants are CAUTIONED that, if they do not respond by this deadline, the affirmative defense of failure to exhaust administrative remedies will be waived.

SO ORDERED on February 26, 2021

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT